| | |
|---|---|
| Diane Hansen-Schmeer,<br><br>*On behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Pizza Properties of North Carolina, Inc.; Pizza Properties, Inc.; Robert Taylor; Doe Corporation 1-10; John Doe 1-10;<br><br>Defendants. | Case No.<br><br>Judge<br><br>Magistrate Judge<br><br>Jury Demand Endorsed Hereon |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Diane Hansen-Schmeer, on behalf of herself and similarly-situated individuals, brings this action against Defendants Pizza Properties of North Carolina, Inc.; Pizza Properties, Inc.; Robert Taylor; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.6, *et seq.*

2.     Defendants operate multiple Domino's Pizza locations ("Defendants' Domino's stores").

3.     Plaintiff seeks to represent the delivery drivers who have worked at Defendants' Domino's stores.

4.     Defendants repeatedly and willfully violated the Fair Labor Standards Act and the North Carolina Wage and Hour Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.     All delivery drivers at Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's North Carolina law claims.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Diane Hansen-Schmeer

9.     Plaintiff Diane Hansen-Schmeer is a resident of North Carolina.

10.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and the North Carolina Wage and Hour Act.

2

11.     Plaintiff has given written consent to join this action.

**Defendants**

**Pizza Properties of North Carolina, Inc.**

12.     Defendant Pizza Properties of North Carolina, Inc. is doing business in and authorized to do business under the laws of North Carolina.

13.     Pizza Properties of North Carolina, Inc. is the entity that operates Defendants' Domino's stores in North Carolina.

14.     Upon information and belief, Pizza Properties of North Carolina, Inc. owns several Domino's stores in North Carolina.

15.     Pizza Properties of North Carolina, Inc. was the entity that appeared on Plaintiff's paystubs for work she completed for Defendants' Domino's stores.

16.     Pizza Properties of North Carolina, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     Pizza Properties of North Carolina, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18.     At all relevant times, Pizza Properties of North Carolina, Inc. maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

3

19.     Pizza Properties of North Carolina, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and the North Carolina Wage and Hour Act.

20.     At all relevant times, Pizza Properties of North Carolina, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21.     Pizza Properties of North Carolina, Inc.'s gross revenue exceeds $500,000 per year.

**Pizza Properties, Inc.**

22.     Defendant Pizza Properties, Inc. is a foreign corporation organized under the laws of the state of New Jersey, with its principal place of business in Pennsylvania.

23.     Pizza Properties, Inc. is an entity that operates Defendants' Domino's stores.

24.     Upon information and belief, Pizza Properties, Inc. owns several Domino's stores.

25.     Pizza Properties, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.     Pizza Properties, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

27.     At all relevant times, Pizza Properties, Inc. maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

28.     Pizza Properties, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and the North Carolina Wage and Hour Act.

4

29.     At all relevant times, Pizza Properties, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

30.     Pizza Properties, Inc.'s gross revenue exceeds $500,000 per year.

**Robert Taylor**

31.     Defendant Robert Taylor is the owner of Pizza Properties of North Carolina, Inc., Pizza Properties, Inc., and Defendants' Domino's stores.

32.     Robert Taylor is the President of Pizza Properties of North Carolina, Inc.

33.     Robert Taylor is the President of Pizza Properties, Inc.

34.     Robert Taylor is the owner of Pizza Properties of North Carolina, Inc.

35.     Robert Taylor is the owner of Pizza Properties, Inc.

36.     Robert Taylor is the officer of Pizza Properties of North Carolina, Inc.

37.     Robert Taylor is the officer of Pizza Properties, Inc.

38.     Robert Taylor operates multiple Domino's stores in North Carolina and throughout the United States.

39.     Robert Taylor is individually liable to the delivery drivers at Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA and the North Carolina Wage and Hour Act because he owns and operates Defendants' Domino's stores, serves as a president and owner of Pizza Properties of North Carolina, Inc. and Pizza Properties, Inc., ultimately controls significant aspects of Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

40.     Robert Taylor is the franchisee of Defendants' Domino's stores.

41. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had financial control over the operations at each of Defendants' Domino's stores.

42. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has a role in significant aspects of Defendants' Domino's stores' day to day operations.

43. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had control over Defendants' Domino's stores' pay policies.

44. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had power over personnel and payroll decisions at Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

45. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's stores.

46. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Domino's stores.

47. At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to transfer the assets and liabilities of the Defendant entities.

6

48.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to declare bankruptcy on behalf of the Defendant entities.

49.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to enter into contracts on behalf of each of Defendants' Domino's stores.

50.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor has had the power to close, shut down, and/or sell each of Defendants' Domino's stores.

51.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, Robert Taylor had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

52.     Defendants' Domino's stores function for Robert Taylor's profit.

53.     Robert Taylor has influence over how Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

54.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

55.     Upon information and belief, Robert Taylor owns and/or operates, in whole or in part, a number of other entities that make up part of Defendants' Domino's operation.

7

56.     Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

57.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

58.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

59.     Upon information and belief, Robert Taylor has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA and North Carolina wage law.

60.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

61.     During all relevant times, Defendants have operated Defendants' Domino's stores.

62.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at Defendants' Domino's stores.

63.     All delivery drivers employed at Defendants' Domino's stores over the last three years have had essentially the same job duties.

8

64.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside Defendants' Domino's stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, take the trash out, preparing food, and completing other duties inside the restaurant as necessary.

65.     Defendants' delivery drivers have been paid at or around minimum wage for the hours they worked inside the store.

66.     Defendants' delivery drivers are paid minimum wage minus a tip credit for the hours they work on the road making deliveries.

67.     Defendants' delivery drivers work "dual jobs."

68.     Defendants' delivery drivers' non-tipped job duties are not related to their tipped job duties.

69.     Defendants' delivery drivers' non-tipped job duties are not completed contemporaneously with their tipped job duties.

70.     Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

71.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

72.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

9

73.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

74.     Upon information and belief, Defendants reimburse delivery drivers $0.28 for each mile driven completing deliveries for the benefit of Defendants.

75.     Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

76.     Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

77.     Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

78.     Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

79.     Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

80.     Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

81.     Defendants do not collect receipts of delivery drivers' automobile registration costs.

10

82.     Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

83.     Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Domino's stores.

84.     Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

85.     Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

86.     Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

87.     Defendants' Domino's stores did not even reasonably approximate the delivery drivers' expenses.

88.     Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

89.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.     2017: 53.5 cents/mile
b.     2018: 54.5 cents/mile
c.     2019: 58 cents/mile
d.     2020: 57.5 cents/mile

90.     The delivery drivers at Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

11

91.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and North Carolina law.

92.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Domino's stores.

93.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

94.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

95.     Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

96.     Defendants' delivery drivers are sometimes required to go to other of Defendants' stores or to the grocery store to get food and supplies. The drivers are not reimbursed at all for the miles they drive completing these tasks.

97.     Defendants have willfully failed to pay federal and North Carolina state minimum wage to Plaintiff and similarly situated delivery drivers at Defendants' Domino's stores.

### Plaintiff's Individual Factual Allegations

98.     Plaintiff worked at the Defendants' Domino's store located at 5621 Carolina Beach Road, Suite F, Wilmington, North Carolina from approximately January 2018 to approximately May 2019 and again from approximately February 2019 to the present.

99.     Plaintiff also worked at Defendants' Domino's store located at 400 N Lake Park Blvd, Carolina Beach, North Carolina from approximately May 2018 until approximately September 2018.

100.    According to her paystubs, Plaintiff was paid $4.50 per hour—minimum wage minus a tip credit—for the hours she worked on the road delivering pizza while employed at each of Defendants' stores at which she worked.

101.    When Plaintiff was not delivering food, she worked inside the restaurant. Her work inside the restaurant included washing bins, taking out the trash, breaking down boxes, stocking dry goods, preparing and bottling sauces, preparing cheese, and completing other duties inside the restaurant as necessary.

102.    Plaintiff's inside duties were not related to her delivery duties.

103.    According to her paystubs, Plaintiff was paid minimum wage, $7.25, for the hours she worked inside each of Defendants' stores.

104.    Plaintiff was required to use her own car to deliver pizzas.

105.    While working at Defendants' Wilmington, NC store from approximately January 2018 until approximately May 2018, Plaintiff was reimbursed at a flat rate $1.00 per delivery when she delivered a single order, and a flat rate of $1.50 when she delivered two orders during a delivery trip.

13

106.    While working at Defendants' Carolina Beach, NC store from approximately May 2018 until approximately September 2018, Plaintiff was reimbursed $0.25 per mile she drove while completing delivery orders for Defendants.

107.    When Plaintiff returned to work at Defendants' Wilmington, NC store in approximately February 2019, she was again reimbursed $1.00 per delivery when she delivered a single order, and $1.50 when she delivered two orders during a delivery trip.

108.    In or around the spring of 2019, Defendants changed their reimbursement policy at the Wilmington, NC store, and Plaintiff was compensated at $0.32 per mile she drove while completing delivery orders for Defendants. Since that time, the reimbursement rate has fluctuated between $0.32 per mile and $0.28 per mile Plaintiff drives while completing delivery orders for Defendants.

109.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

110.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

111.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

112.    Defendants did not track the actual expenses incurred by Plaintiff.

14

113.     Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

114.     Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

115.     Plaintiff is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

116.     Defendants did not reimburse Plaintiff based on a reasonable approximation of her expenses.

117.     Plaintiff completed approximately 3 to 4 deliveries per hour.

118.     Plaintiff estimates that she drives approximately 4 miles per delivery.

119.     Thus, when Plaintiff was reimbursed at a flat rate per order, Defendants' average effective reimbursement rate for Plaintiff was between approximately $0.25 per mile ($1.00 per delivery / 4 average miles per delivery) and $0.375 per mile ($1.50 per delivery / 4 average miles per delivery).

120.     Because Defendants did not track, keep records of, or reimburse Plaintiff's actual expenses, they were required to reimburse Plaintiff at the IRS standard business mileage rate.

121.     For example, when Plaintiff was reimbursed at a flat rate in 2018, Plaintiff was under-reimbursed between $0.17 and $0.325 per mile, or the difference between her average effective reimbursement rate ($0.25 to $0.375) and $0.545, the IRS standard mileage rate for 2018. Considering Plaintiff's estimate of about 4 average miles per delivery, Defendants under-reimburse her by between $1.00 ($0.25 x 4 miles) and $1.30 per ($0.325 x 4 miles) delivery in 2020.

15

122.    Accordingly, while making deliveries for a flat reimbursement rate in 2018, Plaintiff consistently "kicked back" to Defendants between $3.00 and $5.20 per hour ($1.00 x 3 deliveries per hour; $1.30 x 4 deliveries per hour).

123.    In 2020, for another example, the IRS business mileage reimbursement has been $0.575 per mile, and Defendants have reimbursed Plaintiff at a per-mile rate that has fluctuated between $0.28 and $0.32 per mile.

124.    Thus, during 2020, Defendants' under-reimbursed Plaintiff by approximately $0.255 ($0.575-$.32) to $0.295 ($0.575-$.28) per mile. Considering Plaintiff's estimate of about 4 average miles per delivery, Defendants under-reimburse her by between $1.02 ($0.255 x 4 miles) and $1.18 per ($0.295 x 4 miles) delivery in 2020.

125.    Accordingly, while making deliveries in 2020, Plaintiff consistently "kicked back" to Defendants between $3.06 and $4.72 per hour ($1.02 x 3 deliveries per hour; $1.18 x 4 deliveries per hour).

126.    Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants paid her a lower hourly wage rate than they promised her she would receive.

127.    Defendants failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

128.    Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action

Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

129.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

130.    Defendants' unlawful conduct is pursuant to a company policy or practice.

131.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

132.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

133.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

134.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

135.    The FLSA Collective members are readily identifiable and ascertainable.

136.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### CLASS ACTION ALLEGATIONS

17

137.     Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Domino's stores in the State of North Carolina between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

138.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

139.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

140.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

141.     All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

142.     For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

143.     Notice can be provided by means permissible under Rule 23.

144.     The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

145.     There are more than 50 Rule 23 Class members.

18

146.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

147.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the North Carolina Wage and Hour Act.

148.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

149.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

150.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

151.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

152.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

153.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

   a.   Whether Plaintiff and the members of the Rule 23 Class all drive their personal cars to complete deliveries for Defendants;

   b.   Whether Plaintiff and the members of the Rule 23 Class are required to pay for job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties;

   c.   Whether Defendants failed to pay minimum wages to members of the Rule 23 Class as required by the North Carolina Wage and Hour Act;

   d.   Whether Defendants failed to pay the Rule 23 Class all wages earned by them and promised to them in violation of the North Carolina Wage and Hour Act;

   e.   Whether defendants reimbursed the Rule 23 Class for their actual expenses;

   f.   Whether Defendants reimbursed the Rule 23 Class at the IRS standard business mileage rate; and

   g.   Whether Defendants reasonably approximated the expenses incurred by Plaintiff and the Rule 23 Class while they were completing deliveries.

154.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

20

155. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

156. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

157. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

158. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

159. Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

160. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

161. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

162. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – N.C. Gen. Stat. 95-25.6**
**(On Behalf of Plaintiff and the Rule 23 Class)**

163.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

164.     Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

165.     Defendants paid Plaintiff and the Rule 23 Class minimum wage minus a tip credit for the hours they worked on the road making deliveries.

166.     The North Carolina Wage and Hour Act states that every employer shall pay every employee all wages and tips accruing to the employee on the regular payday. *See* N.C. Gen. Stat. 95-25.6.

167.     Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

168.     By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.6.

169.     Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

170.     As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages and unlawful deductions, unreimbursed expenses, liquidated damages in an amount equal to their unpaid wages, unlawful deductions, and unreimbursed expenses, and interest for the two years preceding the filing of the complaint in this matter.

171.   Plaintiff and the Rule 23 Class are further entitled to recover attorneys' fees and costs.

172.   As a result of Defendants' willful violations, Plaintiff and the Rule 23 Class are entitled to damages, including but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Withholding of Wages – N.C. Gen. Stat. § 95-25.8**
**(On Behalf of Plaintiff and the Rule 23 Class)**

173.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

174.   The North Carolina Wage and Hour Act states than an employer is permitted to withhold a portion of an employee's wages provided that the employer has written authorization from the employee which is signed on or before the payday for the pay periods for which the deduction is made; indicated the reason for the deduction; and states the actual dollar amount of wages which shall be deducted from one or more paychecks. *See* N.C. Gen. Stat. 95-25.8(a)(2).

175.   Defendants have not obtained written authorization from the Plaintiff or the Rule 23 Class to withhold a portion of their wages to cover their delivery-related expenses, which constitute *de facto* deductions from pay.

176.   Defendants have not obtained written authorization from Plaintiff or the Rule 23 Class to withhold a portion of their wages on account of the FLSA tip credit.

177.   Defendants did not act in good faith when they violated the North Carolina Wage and Hour Act.

178.     Plaintiff and the Rule 23 Class are entitled to their unpaid wages and unlawful deductions, liquidated damages in an amount equal to their unpaid wages and unlawful deductions, and interest for the two years preceding the filing of the complaint in this matter.

179.     Plaintiff and the Rule 23 Class are further entitled to recover their attorneys' fees and costs.

180.     As a result of Defendants' willful violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 4
### Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Class)

181.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

182.     Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

183.     The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

184.     The benefit that Plaintiff and the Rule 23 Class conferred was not conferred officiously.

185.     The benefit that Plaintiff and the Rule 23 Class conferred was not gratuitous.

186.     The benefit that Plaintiff and the Rule 23 Class conferred was measureable.

187.     Defendants knew that Plaintiff and the Rule 23 Class conferred that benefit on Defendants and consciously accepted the benefit.

24

188.     As described above, Defendants received benefits as a result of Plaintiff and the Rule 23 Class providing and maintaining "tools of the trade."

189.     The benefits include, but are not limited to, direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased business value.

190.     Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Class for these benefits.

191.     Accordingly, Defendants retention of these benefits under these circumstances would be unjust.

192.     As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Diane Hansen-Schmeer prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under the North Carolina Wage and Hour Act.

F. An award of unpaid wages, unlawful deductions, and withheld wages due under the North Carolina Wage and Hour Act.

G. An award of liquidated damages under the North Carolina Wage and Hour Act.

H. An award of interest under the North Carolina Wage and Hour Act.

I. An award of prejudgment and post-judgment interest.

J. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K. Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ Mary-Ann Leon
Mary-Ann Leon
N.C. State Bar No. 26476
The Leon Law Firm, P.C.
704 Cromwell Dr., Ste. E
Greenville, NC 27858

Andrew R. Biller (*pro hac vice forthcoming*)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (*pro hac vice forthcoming*)

26

Philip J. Krzeski (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd., St. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Mary-Ann Leon
Mary-Ann Leon

28